1  Kaveh Navab (State Bar No. 280235)
   NAVAB LAW, APC
2  13160 Mindanao Way, Suite 280
   Marina Del Rey, California 90292
3  Telephone: 310.826.1002
   navablaw@gmail.com
4

5  Karen N. Jacobs, Esq. (238607)
   JACOBS LAW FIRM, APC
6  9454 Wilshire Blvd. #830
   Beverly Hills, CA 90212
7  (424) 777-0207 • Fax: (877) 977-8899
   Kjacob@jacobslawfirm.net
8

9  *Attorneys for Plaintiff,*
   MARISEL PEREZ, individually and successor in interest
10

11              **UNITED STATES DISTRICT COURT**

12              **EASTERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  MARISEL PEREZ, individually, and sucessor in interest to the Deceased, Jacob Apodaca, | Case No.: |
| 15              Plaintiff, | **COMPLAINT FOR DAMAGES** |
| 16         vs. | 1.  Failure To Protect (42 U.S.C. § 1983) |
| 17  COUNTY OF MERCED, a municipal entity; MERCED COUNTY SHERIFF'S OFFICE, a | 2.  Deprivation of Life Without Due Process (42 U.S.C. § 1983) |
| 18  public entity; SHERIFF VERNON WARNKE, in his individual capacity and official capacity; | 3.  Municipal Liability for Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983) |
| 19  SOTO, in his individual capacity; ANDREA SWEENEY, in her individual capacity; | 4.  Failure to Summon Immediate Medical Care (Violation of California Government Code §845.6) |
| 20  ROMAN GRANADO, in his individual capacity, and DOES 1-20 inclusive, | 5.  Negligence |
| 21              Defendants. | 6.  Wrongful Death |
| 22 | 7.  Negligent Supervision, Training, Hiring and Retention |
| 23 | 8.  Violation of Tom Bane Civil Rights Act (Civil Code § 52.1) |
| 24 | 9.  Intentional Infliction of Emotional Distress |

25

26

27              **DEMAND FOR JURY TRIAL**

28

**COMPLAINT FOR DAMAGES**

Plaintiff MARISEL PEREZ, individually and as a succor in interest to DECEDENT, Jacob Apodaca, against Defendants COUNTY OF MERCED, a public entity, MERCED COUNTY SHERIFF'S OFFICE, a public entity, VERNON WARNKE, in his individual and official capacity as Sheriff of the MERCED COUNTY SHERIFF'S OFFICE, SOTO, in his individual capacity, ANDREA SWEENEY, in her individual capacity, ROMAN GRANADO, in his individual capacity, and DOES 1-20, inclusive (collectively "Defendants") alleges as follows:

**INTRODUCTION**

1.      This civil rights action seeks compensatory and punitive damages from Defendant COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, SHERIFF VERNON WARNKE, SOTO, ANDREA SWEENEY, ROMAN GRANADO, and Doe Officers for violating various rights under the United States Constitution and state law in conjunction with the tragic and wrongful death of Plaintiff's son, Jacob Apodaca ("Decedent") on October 19, 2022.

2.      Defendant COUNTY OF MERCED (hereinafter, "Defendant County") has failed to impose adequate discipline on its institutions, entities, and subdivisions, including but not limited to the MERCED COUNTY SHERIFF'S OFFICE ("Sheriff's Office"), as well as deputies who committed different types of violations under the United States Constitution and state laws, creating a culture of impunity within the Sheriff's Office that encourages such violence and incidents of Constitutional violations against the public.

3.      Defendant Sheriff's Office, as the law enforcement entity of Defendant County, has failed to impose adequate discipline on its deputies who committed different types of violations under the United States Constitution and state laws, creating a culture of impunity within the Defendant Sheriff's Office that encourages such violence and incidents of Constitutional violations against the public.

4.      Defendant SHERIFF VERNON WARNKE ("Defendant Sheriff Warnke") is an employee and elected official of Defendant County.  Defendant Sheriff Warnke is the chief law enforcement officer of Defendant County and manages and operates Defendant Sheriff's Office, is

responsible for law enforcement in the County of Merced, and ensures that all local, state, and federal laws are followed. Defendant Sheriff Warnke has failed to impose adequate discipline on his deputies who committed several violations under the United States Constitution and state laws, creating a culture of impunity within the Defendant Sheriff's Office that encourages such violence and incidents of constitutional violations against the public.

5.      Defendant County, by summarily rejecting Plaintiff's claim for damages, has proved unwilling to accept responsibility for the wrong committed by its deputies and employees. Defendant County continues to violate its citizens' rights by ignoring the allegations and by failing to prevent these incidents from occurring.

6.      Defendant Sheriff Warnke has failed to impose adequate discipline on his officers who allowed and committed various types of constitutional violations creating a culture of impunity within the Sheriff's Office that encourages these constitutional violations against the public.

7.      Defendant DOES 1 through 5 (hereinafter, "Does 1-5") and Defendant DOES 6 through 10 (hereinafter, "Does 6-10") are directly liable for Plaintiff's injuries under federal law pursuant to 42 U.S.C. § 1983 and state law.

8.      Defendants County, Sheriff's Office, Defendant Sheriff Warnke, Does 1-5 and Does 6-10 also proximately caused Plaintiff's injuries and are liable under state and federal law, the doctrine of vicarious liability, and under principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

9.      The policies and customs behind failing to separate known gang members by affiliation in the jail facilities, failure to prevent cruel and unusual punishment, and other wrongdoing under the Constitution and State laws toward citizens like Plaintiff and Decedent are fundamentally unconstitutional and constitute a menace of major proportions to the public. Accordingly, insofar as Plaintiff herein seeks, by means of this civil rights action, to hold accountable those responsible for the death of Decedent and to challenge Defendants' unconstitutional policies and practices, this civil rights action is firmly in the public interest.

**VENUE AND JURISDICTION**

10.     Venue is proper in this District because the underlying acts, omissions, injuries and related facts and circumstances giving rise to the present action occurred in this District.

11.     Intradistrict venue is proper in the Freson Division of the Eastern District of California pursuant to E.D. Cal. L.R. 120(d) because the claims asserted herein arose from acts and/or omissions which occurred in the County of Merced, California.

12.     Jurisdiction of this Court is invoked under 42 U.S.C. §1983 pursuant to 28 U.S.C. §§ 1331. This action at law for money damages arises under 42 U.S.C. § 1983 and the United States Constitution, the laws of the State of California, and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by said statutes, and by the United States Constitution. Plaintiff further invokes pendant jurisdiction of the Court per 28 U.S.C. § 1367 to consider the claims arising under state law.

**PARTIES**

13.     Decedent Jacob Apodaca ("Decedent") was, at all times relevant to this action, an individual residing in the County of Merced, California.

14.     Plaintiff Marisel Perez ("Plaintiff") is, and at all relevant times mentioned herein, was an individual residing in San Antonio, Texas and is the biological mother of Decedent. Plaintiff sues in her individual capacity as the mother of Decedent and as successor-in-interest to Decedent pursuant to *California Code of Civil Procedure* section 377.30. A declaration pursuant to section 377.32 is filed concurrently herewith. Plaintiff seeks both survival and wrongful death damages under federal and state law.

15.     Plaintiff is informed and believes that Defendant County of Merced ("Defendant County") is and was a duly organized public entity, existing as such under the laws of the State of California. Defendant County conducts its law enforcement functions through its operation, maintenance, and management of the Sheriff's Office and the Merced County Main Jail ("County Jail"), which are duly organized public entities, existing as such under the laws of the State of California. At all relevant times, Defendant County was the employer of all named Defendants,

Defendants Does 1-5, Does 6-10, Defendant Sheriff Warnke, and Defendants Does 11 through 20 (hereinafter, "Does 11-20") who are  Defendant County officials, deputies, and employees and are sued in their individual capacities for damages only.

16.     At all relevant times, Defendant County was the employer of Defendant Sheriff Warnke and Defendants Does 1-5, Does 6-10, and Does 11-20, who are the Sheriff Office's officials, sheriff's deputies, and employees and are sued in their individual capacities for damages only.

17.     Plaintiff is informed and believes that Defendants Does 1-5 and Does 11-20 were sheriff's deputies as the Sheriff's Office and individuals living in the County of Merced, California. At all relevant times, Defendant County, by and through the Sheriff's Office, was the employer of Defendants Does 1-5 and Does 11-20, who are sued in their individual capacities for damages only.

18.     Plaintiff is informed and believes that Defendants Does 6-10 and Does 11-20 were correctional officers, employees, and staff at the County Jail and individuals living in the County of Merced, California. At all relevant times, Defendant County, by and through the County Jail, was the employer of Defendants Does 6-10 and Does 11-20, who are sued in their individual capacities for damages only.

19.     Plaintiff is informed and believes that Defendant Sheriff Warnke is an individual living in the County of Merced, California. At all relevant times, Defendant Sheriff Warnke was the employee and agent of Defendant County and was acting under color of law within the course and scope of his respective duties as the Sheriff and with complete authority and ratification of his principal Defendant County.

20.     Plaintiff is informed and believes that Defendant Soto ("Defendant Soto") is an individual living in the County of Merced, California. At all relevant times, Defendant Soto was the employee and agent of Defendant County and was acting under color of law within the course and scope of his respective duties as a deputy or officer and with complete authority and ratification of his principal Defendant County.

21.     Plaintiff is informed and believes that Defendant Andrea Sweeney ("Defendant Sweeney") is an individual living in the County of Merced, California. At all relevant times, Defendant Sweeney was the employee and agent of Defendant County and was acting under color of law within the course and scope of her respective duties as a deputy or officer and with complete authority and ratification of her principal Defendant County.

22.     Plaintiff is informed and believes that Defendant Roman Granado ("Defendant Granado") is an individual living in the County of Merced, California. At all relevant times, Defendant Granado was the employee and agent of Defendant County and was acting under color of law within the course and scope of his respective duties as a deputy or officer and with complete authority and ratification of his principal Defendant County.

23.     At all relevant times, Defendants Does 1-5, Does 6-10, and Does 11-20 were duly authorized employees and agents of Defendant County and the Defendant Sheriff's Office, who were acting under color of law within the course and scope of their respective duties as employees of Defendant County and with the complete authority and ratification of their principal, Defendants County and Sheriff Warnke.

24.     At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant herein.

25.     The true identities of Defendant Does 1-10 and Does 11-20 are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitious named Defendants is responsible in some manner for the conduct and liabilities alleged herein.

26.     In doing the acts and failing and omitting to act as hereinafter described, Defendants Does 1-10 and Does 11-20 were acting on the implied and actual permission and consent of Defendant County.

-4-

27.     All Defendants who are natural persons, including Defendants Does 1-10 and 11-20 are sued individually and/or in his/her official capacity as deputies, officers, sergeants, captains, commanders, supervisors, and/or civilian employees, agents, policy makers, and representatives for the Defendant County.

28.     Defendant County is liable for Plaintiff's injuries under California law and under the doctrine of *respondeat* superior. Liability under California law for public entities and public employees is based upon California Government Code sections 815.2 and 820.

**EXHAUSTION OF PRE-LAWSUIT PROCEDURES FOR STATE LAW CLAIMS**

29.     On December 19, 2023, Plaintiff Marisel Perez filed a comprehensive and timely notice of governmental tort claims with Defendant County of Merced. Plaintiff Marisel was unaware that a claim had already been filed. On January 10, 2023, Plaintiff received notice from Defendant County of Merced that the claim was either an amendment or duplicate of claim previously filed on October 25, 2023. The letter further stated that pursuant the claim that was filed on October 25, 2023, the Defendant County of Merced submitted a notice of action on December 12, 2023, stating "Rejected by the Board Supervisors Action on December 6, 2023."

**FACTUAL ALLEGATIONS**

30.     At all times relevant herein, all wrongful acts described were performed under the color of state law and/or in concert with or on behalf of those acting under the color of state law.

31.     On July 27, 2022, Decedent was booked into the custody of Defendants County and Sheriff's Office at the Merced County Main Jail, located at 700 West 22nd Street, Merced, California 95340.

32.     Decedent was booked as a pretrial detainee subject to the following criminal charges: (1) "PC664/187(a)- F: Attempted Murder," (2) "PC245(a)(1) – F: Assault W/ Deadly Weapon: Not F/Arm," (3) "PC186.22(a) – F: Participation In Criminal Street Gang Activity," (4) PC422(a) – F: Criminal Terrorists Threats," (5) "PPC211 – F: Robbery – 212.5(a) 1st Degree," (6) "PC664/187(a) – F: Attempted Murder," (7) "PC186.22(a) – F:Participation In Criminal Street Gang Activity," (8) "PC211 – F: Robbery – 212.5(a) 1st Degree," (9) "PC 190.2(a)(1): Murder Enhancement," (10) "PC

190.2(a)(1): Murder Enhancement," and (11) "PC 148(a)(1) – M: Resist, Delays Or Obstructs Any Public Officer, Peace Officer or Emergency Medical Technician."

33.     Defendant Sheriff's Office "Warrant of Arrest" identified the Decedent as having a tattoo on his fingers: "'1' Dot Right Finger, '4' Dots Left Finger." Tattoos containing the number "14" are commonly associated with the Norteno or Neustra Familia gang, where the letter "N" is the fourteenth letter of the alphabet.

34.     Defendant Sheriff's Office "Pre-Booking Form" identified the Decedent as having "Gang Involvement."

35.     Defendant Sheriff's Office July 27, 2022 questionnaire for the Decedent contained the following questions and answers:

a.     "Do you have any enemies?" The Decedent responded, "**Yes**" and "Comments: **Active Norteno From Livas**."

b.     "Do you have any gang affiliations?" The Decedent responded, "**Comments: Norteno/Livas**."

36.     Despite this obvious gang affiliation, the Defendant Sheriff's Office's questionnaire failed to identify the Decedent as having "High Risks" including, but not limited to, "Gang Member," "Enemies," or "House Alone," and failed to identify the Decedent as necessitating "Special Conditions," including but not limited to, "Caution," "Protective Custody," and/or "Segregation."

37.     On July 28, 2022, correctional officer, Defendant Granado, conducted a subject classification interview upon Decedent. Defendant Granado reported his classification, in pertinent part, as follows: "I spoke with Jacob Apodaca in regards to his housing and gang affiliation. Apodaca stated he associates and participates an Livas Norteno from Livingston, California. Apodoca has affiliated as a Norteno for approximately 1 year. Has associated with them since he was young. Apodaca states he is in good standing with other Norteno gang members and informed me his brother is Jeremiah Apodaca, a well-known Norteno. Apodaca has gang related tattoos to include as 'N' on the back of his left hand, 'LST' on his right wrist, and four dots on his left knuckles.

[¶] I reviewed Apodaca's past criminal history and current charges. Apodaca does not have any prior felony convictions. Apodaca is currently in custody for attempted murder, assault with a deadly weapon, participating in a criminal street gang, robbery. Apodoca was unfamiliar with his housing options here in Merced County. I offered different housing options to Apodaca and he chose to house in general population (GP). Apodaca stated he does not have any safety concerns or issues housing GP with active Norteno gang members [.] After medical clearance, Apodaca is cleared to house GP active Norteno 3 Block Cell 4."

38.     Defendant Granado assigned Decedent's housing as "Clear to House GP Active Norteno 3 Block Cell 4.

39.     On July 30, 2022, Defendant Sweeney, sergeant, approved Defendant Granado's assignment of Decedent's housing as the following: "Clear to house GP Active Norteno 3 Block Cell 4."

40.     Between August 3, 2022 to October 19, 2022, Decedent was assigned and housed in the jail's general population. 3 Block Cell 4.

41.     On information and belief, Defendants County, Sheriff's Office, including their jail staff, Sweeney, Granado and Does 1-20 classified, assigned, and housed Decedent with other inmates that placed Decedent at a direct risk of harm that was known to them based on Decedent's gang affiliations, his interview responses, his pending criminal charges, and based on the presence of contraband in the jail.

42.     On or about On October 19, 2022, Decedent was attacked by multiple inmates wielding contraband weapons in jail. The inmates stabbed Decedent multiple times, including in the chest and abdomen. He was struck with a blunt object resulting in multiple injuries, including in his neck and head.

43.     Defendants County, Sheriff's Office, including their jail staff, and Does 1 to 20, failed to discover the attack on Decedent while it was transpiring. Defendants County, Sheriff's Office, including their jail staff, and Does 1 to 20, were not monitoring the location of the attack, including failing to monitor the cameras of the area, and failed to conduct the necessary checks and

monitoring requirements at the time of the attack and killing. At around 3:40 p.m., radio traffic reported, "man down," and called for additional officers to respond to the jail's 3 Block for a "possible deceased person." At around 3:41 p.m., medical staff was advised to respond to the location of the incident via "Code 3." Finally, multiple medical staff responded to the location of the incident.

44.    When they arrived at the location of the incident, Decedent was discovered "hunched" against a wall, covered in blood, with a shower curtain draped over him. He was non-responsive.

45.    Defendant Does 1-20 handcuffed individuals inside of the cell where Decedent was located.

46.    Responding medical staff then asked Defendant Soto, the sergeant, if they could enter the cell and assess the injured inmate, Decedent. Defendant Soto refused medical staff's request to enter the cell and treat Decedent. Accordingly, responding medical staff attempted to assess Decedent through jail bars and, through the jail bars, removed the shower curtain that was covering Decedent.

47.    Responding medical staff observed multiple stab wounds throughout Decedent's body, including stab wounds on his left chest, left shoulder, and left trunk area, and a large and deep laceration to the left side of Decedent's neck.

48.    Because they were not allowed to enter the cell, medical staff had to check Decedent's pulse and respirations through the jail bars. No pulse or respirations were detected.

49.    Finally, at around 3:45 p.m., Defendant Soto allowed responding medical staff to enter the cell and treat Decedent. Responding medical staff assessed Decedent's pupils, which were fixed, dilated and non-responsive.

50.    Responding medical staff performed compressions on Decedent's chest and administered an Ambu-Bag, oxygen, C-collar, and an automated external defibrillator ("AED").

51.    Decedent was pronounced dead at 4:02 p.m. His cause of death was identified as "stab wounds of chest and abdomen, and blunt impact injuries of head and neck." The description

of how the death occurred was "inmates assaulted victim inside jail cell."

## POLICY/CUSTOM ALLEGATIONS

52.     Defendant Sheriff Warnke has been employed by Defendants County and Sheriff's Office since 1979 and has held supervisorial and/or policymaking positions since at least 1997. He has served as Sheriff since 2014.

53.     As sheriff, Defendant Sheriff Warnke was the final policymaking authority for Defendants County and Sheriff's Office, including but not limited to as it relates to the maintenance and operation of  the jail and detention facilities, training and supervision and the discipline of staff acting under his charge, and the safekeeping of inmates and prisoners in his custody. *See*  Cal. Const. Art. XI §1(b); Cal. Pen. Code §4000; Cal. Pen. Code §4006; Cal.Gov. Code §26605; Cal. Gov. Code §26610.

54.     Defendants County, Sheriff's Office, Sheriff Warnke, and Defendant Does 11-20, including their subsidiary personnel, Defendants Soto, Sweeney, Granado and Defendant Does 1-20, maintained and/or acted pursuant to inadequate policies, customs, training and/or supervision, that resulted in the following deficiencies:

a.     Failure to adequately classify, assign, and house inmates within the jail;

b.     Failure to adequately discern, assess, and consider risk factors of inmates within the jail;

c.     Failure to observe, monitor and supervise inmates within the jail;

d.     Failure to adequately to detect and investigate the presence of contraband within the jail; and

e.     Failure to adequately summon and provide medical treatment to inmates within the jail.

55.     Defendants County, Sheriff's Office, including their jail staff, Defendants Soto Sweeney, Granado and Defendant Does 1-20, were deliberately indifferent to Decedent's health and safety, and knew or should have known that Decedent was at risk of harm based on the following circumstances:

1         a.     The inadequacy of Decedent's booking, classification, and assignment of

2 housing at the jail, including but not limited the housing of Decedent in the jail's general

3 population;

4         b.     The Decedent's gang affiliation with relation to other inmates in the jail,

5 including but not limited to Decedent's affiliation with the Nortenos/Livas gang;

6         c.     The nature and severity of the criminal charges that were filed against

7 Decedent, in particular, but not limited to the PC186.22(a)-F. Participation in Criminal Street

8 Gang Activity charge, the presence of other inmates in the jail who are connected to or have an

9 interest in the outcome of Decedent's criminal charges;

10         d.     The inadequacy of supervision over the smuggling of and/or the creation of

11 contraband in the jail with stabbing and/or blunt-style weapons;

12         e.     The inadequacy of supervision and oversight of inmates in and around the

13 area in which Decedent was housed, including those inmates that were permitted to attack and kill

14 the Decedent undetected;

15         f.     The inadequacy of supervision and oversight of inmates in and around the

16 area in which Decedent was housed, including but not limited to where jail staff did not or could

17 not intervene to prevent or thwart the attack on Decedent; and

18         g.     The inadequacy of medical care of inmates, including but not limited to

19 failing to timely recognized Decedent's need for medical care, to summon immediate necessary

20 medical care, and to permit necessary medical care.

21    56.    Defendants County, Sheriff's Office, Sheriff Warnke and Does 1 to 20 were or

22 should have been on notice of or changed the existing deficient policies or customs and implement

23 new or different versions because the inadequacies and deficiencies of the existing policies or

24 customs were so apparent and likely to result in a violation of rights of persons, including the death

25 of Decedent.

57.     Defendants County, Sheriff's Office, Sheriff Warnke and Does 1 to 20's inadequate policies, customs, training, supervision, and control of personnel and/or inmates did so cause or significantly contributed to the death of Decedent.

**FIRST CAUSE OF ACTION**

**Failure to Protect (U.S. Const. XIV; 42 U.S.C. § 1983)**

(Against Defendants County of Merced, Merced County Sheriff's Office, Sheriff Vernon Warnke, Soto, Andrea Sweeney, Roman Granado and Does 1-20)

58.     Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

59.     Plaintiff, as the biological mother of Decedent, has the right and standing to assert Decedent's claim for the violation of his Fourteenth Amendment rights.

60.     Defendants Sweeney, Granado and Does 1 to 20 insufficiently classified, assigned, and housed Decedent, and put him at significant risk of suffering serious harm, without taking reasonable official acts to eliminate that risk where a reasonable officer/deputy in those circumstances would have appreciated the higher degree of risk involved, in violation of the rights protected by the Fourteenth Amendment of the United States Constitution.

61.     Defendants Soto and Does 1 to 20 denied Decedent timely and necessary medical care, placing him at a substantial risk of causing serious bodily harm, without taking reasonable available actions to reduce that risk, where a reasonable officer/deputy in those circumstances would have appreciated the higher degree of risk involved, in violation of the rights protected by the Fourteenth Amendment of the United States Constitution.

62.     Defendants Soto and Does 1 to 20 knew or should have known that failure to provide timely medical treatment to Decedent could result in injury or the unnecessary and wanton infliction of pain or death, but disregarded that serious medical need, causing Decedent great bodily harm and his untimely death.

63. Defendants County, Sheriff's Office, Sheriff Warnke and Does 1 to 20 maintained policies or customs of action and/or inaction resulting in harm to Decedent, in violation of the rights protected by the Fourteenth Amendment of the United States Constitution.

64. Defendants Sweeney's, Granado's, Soto's, Sheriff Warnke's and Does 1 to 20's actions and/or inactions as alleged herein, along with the acts and/or omissions of the Defendant County and Sheriff's Office in failing to train, supervise and/or promulgate appropriate policies and procedures in order to adequately classify, assign and house inmates with the jail and to provide timely medical care upon for those with serious medical needs constituted deliberate indifference to Decedent's health, safety, and serious medical needs.

65. As a direct and legal result of the aforesaid acts and omissions of Defendants County, Sheriff's Office, sheriff Warnke, Soto, Sweeney, Granado and Does 1 to 20, Decedent was deprived of his liberty and life without warrant or justification.

66. As a result of their conduct, Defendants County, Sheriff's Office, Sheriff Warnke, Soto, Sweeney, Granado and Does 1 to 20, are liable for Decedent's injuries and death either because they were integral participants in the failure to protect Decedent or because they failed to intervene or prevent those violations.

67. As a direct and legal result of the aforesaid acts and omissions of Defendants County, Sheriff's Office, Sheriff Warnke, Soto, Sweeney, Granado and Does 1 to 20, and each of them, Plaintiff has suffered damages, including, without limitation, loss of enjoyment of life, pain and suffering, emotional distress, survival damages, medical expenses, funeral and burial expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

68. Plaintiff seeks reasonable attorneys' fees pursuant to 42 USC § 1988.

69. Plaintiff is informed and believes and thereon alleges that the acts of the individual defendants were committed by each of them knowingly, willfully, and maliciously, with the intent to harm, injure, vex, harass and oppress, with a conscious disregard of Decedent's constitutional rights and by reason thereof, Plaintiff seeks punitive and exemplary damages from Defendants Sheriff Warnke, Soto, Sweeney, Granado and Does 1 to 20.

**SECOND CAUSE OF ACTION**

**Deprivation of Life Without Due Process**

**(U.S. Const. Amends. I and XIV; 42 U.S.C. § 1983)**

(Against Defendants County of Merced, Merced County Sheriff's Office, Sheriff Vernon Warnke, Soto, Andrea Sweeney, Roman Granado and Does 1-20)

70.     Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

71.     The aforementioned acts and/or omissions of Defendants County, Sheriff's Office, Sheriff Warnke, Soto, Sweeney, Granado and Does 1 to 20 in being deliberately indifferent to Decedent's health, safety, and serious medical needs, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Decedent deprived Plaintiff of her liberty interest in the parent-child relationship in violation of her substantive due process rights as defined by the First and Fourteenth Amendment of the United States Constitution.

72.     Plaintiff and Decedent had a cognizable interest under the Substantive Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive of life, liberty or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff's relationship with her son.

73.     Defendants Warnke, Soto, Sweeney, Granado and Does 1 to 20 acted under color of law within the course and scope of Defendant County's deputies, correctional officers, and employees when they, including but not limited to, wrongfully and unreasonably misclassified Decedent and placed him in General Population when they knew he had gang affiliations, failed to detect and investigate the presence of contraband within the jail, failed to adequately observe, monitor and supervise the inmates in the jail,  and failed to summon immediate medical care to Decedent.

74.      Defendants Warnke, Soto, Sweeney, Granado and Does 1 to 20 knew or should have known that their actions and/or inactions could result in injury or the unnecessary and wanton

infliction of pain, but disregarded those serious medical needs, causing Decedent great bodily harm and a painful death.

75.     Defendants Warnke, Soto, Sweeney, Granado and Does 1 to 20 acted under color of state law as County employees when they were recklessly and deliberately indifferent to Decedent's health, safety, and serious medical needs, which resulted in Decedent's death, thereby depriving him of his life without due process of law. Defendants' actions also caused Decedent extreme pain and suffering, loss of life, earning capacity and his relationships with his family and friends. Plaintiff has thereby been deprived of her constitutional rights to be free from the unwarranted state interference in her relationships with Decedent's life.

76.     Defendants Warnke's, Soto's, Sweeney's, Granado's and Does 1 to 20's acts and omissions, along with other undiscovered conduct, shocked the conscience because deliberation was practical and Defendants acted with deliberate indifference to Plaintiff's constitutional rights, and with the purpose to harm unrelated to any legitimate law enforcement objective.

77.     As a legal result of their conduct, Defendants Warnke, Soto, Sweeney, Granado and Does 1 to 20 are liable for Plaintiff's injuries, either because they were integral participants in the deprivation of life without due process, or they failed to intervene to prevent those violations.

78.     The claim against Defendants County and Sheriff's Office is based upon Plaintiff's allegations that their deficient policies, practices or customs as described herein above, or lack of enforcement thereof were a cause of the injuries suffered by the Decedent and Plaintiff herein, and as set forth above, or later ratified the denial and delay of medical care through their conduct after Decedent's death.

79.     As a direct and legal result of Defendants County's and Sheriff's Office's and Does 1 to 20's conduct as alleged above, and other undiscovered intentional or negligent conduct, Decedent was caused to suffer severe pain and suffering and ultimately lost his life. Also, as a direct and proximate result of said Defendants' conduct as alleged above, Plaintiff has been deprived of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of Decedent and will continue to be so deprived for the remainder of her natural life. Plaintiff has

incurred other compensatory and incidental damages, including but not limited to funeral and burial expenses.

80.     Plaintiff is informed and believes and thereon alleges that the acts of the individual defendants were willful, wanton, malicious, intentional, oppressive and done with willful and conscious disregard of Decedent's and Plaintiff's rights, welfare and safety justifying the award of punitive and exemplary damages in an amount to be determined at time of trial.

81.     Accordingly, Defendants, and each of them, are liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff seeks reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

82.     Plaintiff brings this claim as the successor-in-interest to Decedent and further seeks survival damages under this claim.

### THIRD CAUSE OF ACTION

**Municipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(Against Defendants County of Merced, Merced County Sheriff's Office, Sheriff Vernon Warnke, and Does 1-20)

83.     Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

84.     Plaintiff brings this cause of action against Defendants Sheriff Warnke and Does 1 to 20 in their individual capacities. Upon information and belief, Defendant Sheriff Warnke was aware that his deputies or officers were engaging in constitutional violations against citizens and failed to prevent his subordinates from engaging in such conduct.

85.     On information and belief, Defendants Soto, Sweeney, Roman Granado and Does 1 to 20 were not disciplined for the unjustified, unnecessary and tragic death of Decedent and their conduct was ratified by Defendants County, the Sheriff's Office and Sheriff Warnke.

86.     Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), Defendants County, Sheriff's Office, and Sheriff Warnke deprived Decedent and Plaintiff of the rights and liberties secured to them by the First and Fourteenth

Amendments of the United States Constitution, in that said Defendants acted with reckless and deliberate indifference to the rights and liberties of the public in general, of Plaintiff and Decedent, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy and practice of:

a.     Failing to adequately classify, assign, and house inmates within the jail;

b.     Failing to adequately discern, assess, and consider risk factors of inmates within the jail;

c.     Failing to observe, monitor and supervise inmates within the jail;

d.     Failing to adequately to detect and investigate the presence of contraband within the jail; and

e.     Failing to adequately summon and provide medical treatment to inmates within the jail.

87.     Defendants County, Sheriff's Office, and Warnke failed to impose adequate discipline on their deputies and employees, including Does 1 to 20 who committed the constitutional violations, creating a culture of impunity and ignorance within the Sheriff's Office that encourages such ignorance and indifference to the health, safety and life of the public.

88.     Defendants Soto, Sweeney, Granada and Does 1 to 20 acted under color of law within the course and scope of their duties as Defendant Sheriff Office's deputies, correctional officers, and employees when they wrongfully and unreasonably misclassified Decedent and delayed urgent medical care to Decedent, failed to adequately detect and investigate the presence of contraband within the jail, failed to observe or monitor the inmates within the jail, and failed follow protocols of classification of gang members or gang affiliated persons.

89.     Defendants County, Sheriff's Office and Sheriff Warnke, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated, and through actions and inactions thereby, ratified such policies. Said Defendants acted with deliberate indifference to the foreseeable effects and

consequences of these policies with respect to the constitutional rights of Decedent, Plaintiff, and other individuals similarly situated.

90.     By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants County, Sheriff's Office and Sheriff Warnke acted with intentional, reckless, and callous disregard for the life of Decedent and for Decedent's and Plaintiff's constitutional rights. Furthermore, the polices, practices and customs implemented, maintained, and still tolerated by Defendants County, Sheriff's Office and Sheriff Warnke were affirmatively linked to and were a significantly influential force behind the injuries to Plaintiff and Decedent.

91.     By reason of the aforementioned policies and practices of Defendants County, Sheriff's Office, and Sheriff Warnke, Decedent was severely injured and subjected to pain and suffering and lost his life.

92.     By reason of the aforementioned acts and omissions of Defendants County, Sheriff's Office and Sheriff Warnke, Plaintiff has suffered loss of love, companionship, comfort, care, assistance, protection, affection, society and moral support of Decedent.

93.     Defendant Sheriff Warnke is the final policymaker for Defendant Sheriff's Office and approved and ratified the unconstitutional actions of Defendant named officers or deputies and of Defendants Does 1 to 20.

94.     As a direct and legal result of the aforementioned acts and omissions of Defendants County, Sheriff's Office, Sheriff Warnke, and Does 1 to 20, Plaintiff has suffered loss of love, companionship, comfort, care, assistance, protection, affection, society and will continue to be so deprived for the remainder of her natural life.

95.     The conduct of Defendant Sheriff Warnke was willful, wanton, malicious and oppressive and accomplished with conscious disregard for Decedent's rights, and entitles Decedent and Plaintiff to an award of exemplary and punitive damages.

96.     Accordingly, Defendants County, Sheriff's Office and Sheriff Warnke are each liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983. Plaintiff also seeks reasonable attorney's fees pursuant to 42 U.S.C.§ 1988 under this claim. Plaintiff further seeks survival

damages under this claim as a successor-in-interest to Decedent. Plaintiff also seeks wrongful death damages under this claim.

**FOURTH CAUSE OF ACTION**

**Failure to Summon Immediate Medical Care (Cal. Govt. Code § 845.6 and California Common Law) (Survival and Wrongful Death Damages)**

(Against Defendants County of Merced, Merced County Sheriff's Office, Verne Warnke, Soto and Does 1 to 20)

97.     Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

98.     Defendants Soto and Does 1 to 20 knew or had reason to know that Decedent was in need of immediate medical care and failed to take reasonable action to summon medical care, in violation of rights protected by Cal. Govt. Code section 845.6.

99.     Defendants County, Sheriff's Office, Sheriff Warnke and Does 1 to 20 maintained policies or customs of action and inaction resulting in harm to Decedent, in violation of Cal. Govt. Code section 845.6.

100.     Decedent suffered harm and died, and Plaintiff suffered harm, as a direct and proximate result of the conduct of Defendants County, Sheriff's Office, Sheriff Warnke, Soto, and Does 1 to 20 as alleged above.

101.     Plaintiff asserts this cause of action against these defendants pursuant to California Government Code section 845.6, which provides "both public employees and public entities may be liable when an employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

102.     Defendant County is vicariously liable for the wrongful acts of Defendants Sheriff Warnke, Soto and Does 1 to 20 pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

103.    Further, Plaintiff is informed and believes and thereon alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of Decedent and plaintiff's rights, welfare and safety, justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial against the individual Defendants.

104.    Plaintiff brings this claim as successor-in-interest to the Decedent and seeks wrongful death and survival damages for the violation of Decedent's rights.

**FIFTH CAUSE OF ACTION**

**Negligence (Cal. Govt. Code § 820 and California Common Law) (Survival and Wrongful Death Damages)**

(Against All Defendants)

105.    Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

106.    All Defendants failed to comply with professional standards in the treatment, care and supervision of Decedent during his incarceration. Said Defendants' failures include, without limitation, Defendants Sweeney's Granado's and Does 1 to 20's insufficient classification, assignment and housing of Decedent, and Soto's and Does 1 to 20's denial and failure to summon necessary medical care for the Decedent.

107.    At all times mentioned herein, the Defendants County, Sheriff's Office, Sheriff Warnke and Does 1 to 20 owed a duty of care to Decedent to provide for the safety of Decedent, including the proper classification and separation of Decedent and the provision of prompt and adequate medical care. Defendants Sheriff Warnke and Does 1 to 20 breached their duty of care to Decedent by maintaining policies or customs of action or inaction which resulted in harm to Decedent, including the negligent hiring, retention and assignment of its employees, including the individual Defendants.

108.    Defendants County, Sheriff's Office and Does 1 to 20 owed a duty of care under Cal. Govt. Code section 845.6 and breached that duty by, among other actions, maintaining policies or customs of action and inaction which resulted in harm to Decedent.

109.    Defendants County and Sheriff's Office are vicariously liable, through the principles of *respondeat* superior and pursuant to Cal. Govt. Code sections 815.2(a) and 845.6 for injuries proximately caused by the acts and failures to act of employees acting within the course and scope of employment, including Defendants Sheriff Warnke, Soto, Sweeney, Granado and Does 1 to 20.

110.    As a direct and proximate result of all Defendants' conduct as alleged above, and other undiscovered negligent conduct, Decedent was caused to suffer severe pain and suffering and ultimately lost his life. Also, as a direct and proximate result of all Defendants' conduct as alleged above, Plaintiff has been deprived of love, companionship, comfort, care, assistance, protection, affection, society and moral support of Decedent, and will continue to be so deprived for the remainder of her natural life. Plaintiff has incurred other compensatory and incidental damages, including but not limited to funeral and burial expenses.

111.    Plaintiff brings this claim as successor-in-interest to the Decedent and seeks wrongful death and survival damages for the violation of Decedent's rights.

## SIXTH CLAIM FOR RELIEF

### Wrongful Death (Cal. Civ. Proc. Code § 377.60)

(Against All Defendants)

112.    Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

113.    Plaintiff asserts wrongful death actions against all Defendants pursuant to C.C.P. §377.60 *et seq.* This claim is based upon the fact that Defendants' negligent, reckless and wrongful acts and omissions, as alleged herein, were a direct and legal cause of Decedent's death and the resulting damages to Plaintiff. As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the wrongful conduct, or because they failed to intervene to prevent these violations.

114.    The civil rights violations alleged herein, as well as Defendants' other tortious acts and omissions, and negligence under California Civil Code section 1714 form the basis for this cause of action.

115.    Plaintiff is informed and believes and thereon alleges that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety and those of their son, justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial.

116.    As a direct and legal result of Defendants' acts and omissions, Plaintiff suffered damages, including without limitation, loss of earnings and earning capacity, support and benefits, loss of enjoyment of life, pain and suffering, physical injuries and sickness, emotional distress, medical expenses, funeral and burial expenses, attorney's fees, costs of suit, other pecuniary losses not yet ascertain and the loss of Decedent's love, affection, society and companionship.

117.    Defendants County and Sheriff's Office are vicariously liable for the wrongful acts of Defendants Sheriff Warnke, Sweeney, Soto, Granado and Does 1 to 20 pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

118.    Plaintiff seeks wrongful death damages and all other damages and remedies available under state law.

## SEVENTH CLAIM FOR RELIEF

### Negligent Supervision, Training, Hiring and Retention

### (Survival Actions-California State Law)

(Against Defendants Merced County, Merced County Sheriff's Office, Sheriff Vernon Warnke, and Does 1 to 20 )

119.    Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

120.    Defendants had a duty to hire, supervise, train and retain employees and/or agents so that employees and/or agents refrain from the conduct and/or omissions alleged herein.

121.    Defendants breached this duty, causing the conduct alleged herein.

122.    Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

123.    As a direct and proximate result of Defendants' failure, Plaintiff suffered injuries and damages as alleged herein.

124.    The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Decedent and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**EIGHTH CLAIM FOR RELIEF**

**Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1)**

(Against All Defendants)

125.    Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

Deliberate Indifference

126.    Defendants Sweeney, Granado and Does 1 to 20 insufficiently classified, assigned, and housed Decedent, placing him at substantial risk of suffering serious harm, without taking reasonable available measures to reduce this risk, where a reasonable official in their circumstances would have appreciated said high degree of risk involved, with deliberate indifference or reckless disregard of rights protected by the Fourteenth Amendment of the United States Constitution and Article 1, Section 7(a) of the California Constitution.

127.    Defendants Soto and Does 1 to 20 denied Decedent necessary medical care, placing him at substantial risk of suffering serious harm, without taking reasonable available measures to reduce that risk, where a reasonable official in their circumstances would have appreciated said high degree of risk involved, with deliberate indifference or reckless disregard of rights protected by the

Fourteenth Amendment of the United States Constitution and Article 1, Section 7(a) of the California Constitution.

128.   Defendants County of Merced, Sheriff's Office, Sheriff Warnke and Does 1 to 20 maintained policies or customs of action and inaction resulting in harm to Decedent, with deliberate indifference or reckless disregard of rights protected by the Fourteenth Amendment of the United States Constitution and Article 1, Section 7(a) of the California Constitution.

Failure to Summon Medical Care

129.   Defendants Soto and Does 1 to 20 knew or hard reason to know that Decedent was in need of immediate medical care and failed to take reasonable action to summon said medical care, with deliberate indifference or reckless disregard of rights protected by Cal. Govt. Code section 845.6.

130.   Defendants County, Sheriff's Office, Sheriff Warnke and Does 1 to 20 maintained policies or customs of action and inaction resulting in harm to Decedent, deliberate indifference or reckless disregard of rights protected by Cal. Govt. Code section 845.6.

Common Allegations

131.   Defendants County, Sheriff's Office are vicariously liable, through the principles of *respondeat superior* and pursuant to Cal. Govt. Code section 815.2(a), 845.6, for injuries proximately caused by the acts and omissions of employees acting within the scope of employment, including Defendants Sheriff Warnke, Soto, Sweeney, Granado, and Does 1 to 20.

132.   Defendants Sheriff Warnke, Soto, Sweeney, Granado, and Does 1 to 20's actions and inactions constituted oppression, fraud and/or malice resulting in great harm.

133.   Decedent was injured as a direct and proximate result of all Defendants' actions and inactions, entitling Plaintiff to receive compensatory/survival and treble damages and civil/statutory penalties against all Defendants, and punitive damages against Defendants Sheriff Warnke, Soto, Sweeney, Granado and Does 1 to 20.

///

///

**NINTH CLAIM FOR RELIEF**

**Intentional Infliction of Emotional Distress**

(Against Defendants Sheriff Vernon Warnke, Soto, Andrea Sweeny, Roman Granado and Does 1 to 20)

134.    Plaintiff repeats and re-alleges each and every allegation in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

135.    Defendants Sweeney, Granado and Does 1 to 20 engaged in outrageous conduct, including insufficiently classifying, assigning and housing Decedent with intent or reckless disregard of the probability and/or likelihood that Decedent would suffer emotional distress and he did, in fact, suffer severe emotional distress.

136.    Defendants Soto and Does 1 to 20 engaged in outrageous conduct, including denying and failing to summon necessary medical care for Decedent, intending, or with reckless disregard of the probability and/or likelihood that Decedent would suffer emotional distress and he did, in fact, suffer severe emotional distress.

137.    Defendants Sheriff Warnke and Does 1 to 20 engaged in outrageous conduct, including the maintenance of customs of action or inaction which resulted in harm to Decedent, , intending, or with reckless disregard of the probability and/or likelihood that Decedent would suffer emotional distress and he did, in fact, suffer severe emotional distress.

138.    Defendants Warnke, Soto, Sweeney, Granado and Does 1 to 20's actions and/or inactions constituted oppression, fraud and/or malice that resulted in great harm.

139.    Decedent was injured as a direct and proximate result of Defendants Warnke, Soto, Sweeney, Granado and Does 1 to 20's actions and inactions, entitling Plaintiff to receive compensatory/survival and punitive damages against Defendants Warnke, Soto, Sweeney, Granado and Does 1 to 20.

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF requests entry of judgment as follows:

A.     For general and compensatory damages according to proof;

B.     For special damages according to proof;

C.     For funeral and/or burial expenses;

D.     For punitive, exemplary, treble damages and civil penalties as provided by law, in an amount to be proved against each individual (excluding punitive damages against Defendants County and Sheriff's Office);

E.     For reasonable costs of this suit and attorneys' fees pursuant to 42 U.S.C. § 1988;

G.     Interest, including prejudgment interest, as allowed by law;

H.     For such further other relief as the Court may deem just, proper, and appropriate.

Dated:  June 6, 2023                          **NAVAB LAW, APC**


By____/S/ Kaveh Navab_____
    Kaveh Navab, Esq.
    Attorney for Plaintiff

1

## DEMAND FOR JURY TRIAL

2

3      Plaintiff hereby demands a trial by jury.

4

5   Dated:  June 6, 2023                    **NAVAB LAW, APC**

6

7                                           By    /s/ Kaveh Navab

8                                                 Kaveh Navab, Esq.
                                                  Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28